NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 3, 2022[*]
Decided February 7, 2022

*Before*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 20-2109

| | |
|---|---|
| EMON HOLLINS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 17-cv-738-jdp |
| CITY OF MADISON, et al., | |
| *Defendants-Appellees.* | James D. Peterson, |
| | *Chief Judge.* |

## O R D E R

Emon Hollins was a parolee living in Madison, Wisconsin, when he sued law enforcement officials under 42 U.S.C. § 1983 over his inclusion in Madison's "focused deterrence program." This program, which is intended to reduce recidivism, entails heightened surveillance of selected offenders, but it also provides them with greater

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

access to educational, housing, transportation, substance-abuse, and mental-health resources. Relevant to this appeal, Hollins contends that his inclusion in the program violated his right to equal protection and due process. We rejected similar challenges to Madison's program in *Alston v. City of Madison*, 853 F.3d 901, 906–10 (7th Cir. 2017). Relying on *Alston*, the district court entered summary judgment against Hollins. Because Hollins did not offer any evidence suggesting that the defendants violated his constitutional rights, we affirm.

## I. Background

In 2011, Madison launched its "focused deterrence program" to address the problem of repeat violent offenders. The city created a local unit that nominates candidates for the program based on the recency, frequency, and severity of a candidate's crimes; the police resources already devoted to the candidate; and the reasons to believe that the candidate was reoffending.

Hollins was one of the first offenders selected for the program in 2011. Investigators presented to the selection committee information about Hollins and 17 other candidates regarding the above factors. First, they gave the committee a "short form" summarizing each candidate. These short forms identified candidates by number—omitting name and race—and criminal history. (Investigators created for their own files "long forms" that included each candidate's name and race.) They also gave committee members oral reports on the candidates, which included the number of their police contacts and victims, but not race. (One committee member initially said that she received this information about police contacts from the "forms," but she later corrected herself to say that she received that information only "orally.") All committee members attest that they never saw racial identifiers. After reviewing the investigators' presentations, the committee selected 10 participants; eight of these participants, including Hollins, were African American; one was white, and the last, Latino.

Participants attended a meeting where they learned of their selection into the program, its increased monitoring, and the availability of community resources. Shortly after attending this meeting, Hollins was arrested by his probation agent, who sought revocation of Hollins's probation for threatening violence. His probation was revoked in 2012.

Hollins sued the investigators and members of Madison's police department, Wisconsin's Department of Corrections, and the selection committee for violating his

constitutional right to equal protection and due process. Some defendants moved for summary judgment, which the district court entered. Hollins conceded that the ruling applied to all defendants, and the court entered judgment against him.

## II. Analysis

We review summary judgment de novo, construing the record in Hollins's favor. *See Chicago Tchrs. Union v. Bd. of Educ.*, 14 F.4th 650, 654 (7th Cir. 2021).

### A. Equal Protection

Hollins first argues that the defendants violated his right to equal protection by placing him and other African Americans in the program. A program that "has a disproportionately adverse effect upon a racial minority … is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Pers. Admin. of Mass. v. Feeney*, 442 U.S. 256, 272 (1979). Hollins contends that he has presented evidence of an adverse racial effect (statistics and comparators) and discriminatory purpose (the committee knew his race and was motivated by it). Although the parties debate whether Hollins furnished sufficient evidence of an adverse racial effect, we will assume that he has. Hollins cannot get past summary judgment, however, because he lacks adequate evidence to show that investigators and committee members selected him because of his race.

Hollins contends that he supplied evidence that the committee was aware of his race and acted upon that knowledge. He points to the committee member who initially attested that she received information about police contacts from the "forms" that unit investigators provided. Hollins speculates that she is referring to the "long form" (which included race), and then concludes that this member and the committee, aware that he is an African American, included him in the program because of his race.

This reasoning has two flaws. First, the committee member's statement does not support an inference that she knew Hollins's race. In construing the evidence in Hollins's favor, we will ignore the committee member's later clarification that she learned about police contacts "orally" and not from the "forms." Even so, her initial statement—that she received information about police contacts from the "forms"—does not specify whether it was the short form (which all agree omitted race) or the long form (which included race). Without additional evidence, which Hollins lacks, a factfinder would have to speculate which "form" she meant. But speculation is not a

permissible ground for an inference. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Second, even if we assume that the committee member received the long form—and thus learned of Hollins's race—this knowledge alone does not support a rational inference that race motivated the decision to select Hollins. "[T]he mere awareness … of race should not be mistaken for racially discriminatory intent or for proof of an equal protection violation." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020); *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019).

Hollins next addresses a variation on his claim about equal protection: a "class of one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). But Hollins cannot prevail on this theory unless he can show the lack of a rational basis for his selection in a discretionary program. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 604 (2008). He does not dispute that he has a lengthy history of violent offenses, victims, and police contacts. Nor does he plausibly contend that including him in this program for these reasons is irrational. Thus his class-of-one claim fails. *See id.* Hollins responds that the defendants treated him as a class of one by "lying" about selection criteria and placing him in the program arbitrarily. He points to an early report about the program describing it as designed for the most violent offenders, a group to which he believes he does not belong. He concludes that a jury could reasonably find that, because he does not meet this original criterion, his placement in the program is unconstitutional. But as we just explained, Hollins has not furnished evidence that his inclusion in the program based on the criteria actually used was irrational. Therefore the claim lacks merit.

### B. Due Process Claim

Lastly, Hollins contends that his placement in the program violated his right to due process because it harmed his reputation. He believes that he has met the stigma-plus test of *Paul v. Davis*, 424 U.S. 693, 709 (1976). He argues that, in addition to the stigma from inclusion in the program, his rights were altered in two ways: He had to contact his probation agent more frequently, and his parole was revoked (because of ex parte contacts with judges that, he claims, his inclusion in the program allows).

Hollins's claim does not pass the stigma-plus test. We accept that inclusion in the program necessarily labels a participant a "repeat violent offender," a label that "[w]ithout question … harms one's reputation." *Alston*, 853 F.3d at 909. But Hollins's rights were not altered. First, increased scrutiny from his probation officer did not alter his rights because probationers do not have a protected interest in avoiding reasonable

monitoring from these officers. *Id.* at 910. Second, Hollins's assertion that judges may receive ex parte contacts about offenders in the program is unsubstantiated. In any case, Hollins's parole revocation has never been overturned; unless and until it is, *Heck v. Humphrey* bars a claim for damages based on allegations that such contacts led to his re-imprisonment after revocation. 512 U.S. 477, 486–87 (1994) (barring § 1983 claims that necessarily imply the invalidity of a sentence). *See Alston*, 853 F.3d at 910.

Hollins's other contentions in the district court were not developed on appeal.

AFFIRMED